UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

ORANGE PEEL ENTERPRISES, INC.,             Case No. 16-21023-EPK

     Debtor.                          Chapter 11

_____/

### APPLICATION TO EMPLOY JAMES F. MARTIN AND ACM CAPITAL PARTNERS, LLC AS DEBTOR'S INVESTMENT BANKER *NUNC PRO TUNC* TO AUGUST 9, 2016

Debtor Orange Peel Enterprises, Inc. (the "Debtor"), pursuant to 11 U.S.C. § 327(a), hereby requests approval to employ James F. Martin and ACM Capital Partners, LLC as the Debtor's investment banker *nunc pro tunc* to August 9, 2016. In support of this Application, the Debtor attaches the affidavit of James F. Martin (the "Affidavit") as Exhibit A and states as follows:

### BACKGROUND

1. The Debtor is in the business of formulation, manufacture, and wholesale distribution of health food products and supplements under the Greens+ brand.

2. On August 9, 2016, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Petition Date"). Pursuant to Bankruptcy Code §§ 1107(a) and 1108, the Debtor is operating its business and managing its affairs as a debtor in possession. As of the date hereof, no trustee, examiner, or statutory committee has been appointed in this Chapter 11 case.

3. By the Debtor's estimate, the Debtor owns assets totaling $5,639,131.95, ECF No. 22, p.2, and generated gross revenue of $6,045,626.41 in the twelve months ending on June

30, 2016. However, the Debtor was unfortunately forced to seek bankruptcy protection after it suffered a dramatic reduction in income due to the actions of prior management and was also served with two substantial lawsuits. ECF No. 10 and ECF No. 22, pp.17, 18, 24, and 25.

4.      While the Debtor is exploring all options, it is considering the sale of its assets through this bankruptcy case.

5.      To further this end, the Debtor seeks to employ James F. Martin ("Mr. Martin") and ACM Capital Partners, LLC ("ACM", and with Mr. Martin, the "Firm") as the Debtor's investment banker pursuant to the terms of the Engagement Letter attached hereto as Exhibit B.

6.      As set forth in the Engagement Letter, the Firm's duties would include:

   a.  Assisting in establishing the value of the Debtor's assets;

   b.  Assisting the Debtor with bankruptcy financing, as needed; and

   c.  Marketing the assets of the Debtor for sale via auction.

7.      The Debtor believes that the Firm has significant prior experience as to the aforementioned duties.

## PROFESSIONAL COMPENSATION

8.      The Firm's proposed compensation arrangement is set forth in the Engagement Letter as follows: (a) a $10,000 earned-upon-receipt retainer to be used by the Firm for staffing and other out-of-pocket costs; and (b) a success fee consisting of the greater of $50,000 or 6% of the gross sale proceeds of the Debtor's assets.

9.      The Firm agrees that prior to receiving the payment of any amounts under the Agreement, the Firm will file a fee application with the Court seeking approval for the same.

10.     The Debtor believes that the fee arrangement set forth above and in the Agreement is reasonable and, therefore, should be approved by the Court.

## DISINTERESTEDNESS OF THE FIRM

11.     Based on the Affidavit, the Debtor believes that the Firm does not hold or represent any interest adverse to the estate with respect to the matters for which it is to be employed and is disinterested within the meaning of 11 U.S.C. § 101(14), and that the Firm does not have any connection with the Debtor, its creditors, or any other party in interest or their respective attorneys or accountants, the U.S. Trustee, or any person employed in the office of the U.S. Trustee.

**WHEREFORE**, based on the foregoing, the Debtor respectfully requests that the Court approve the Debtor's employment of the Firm as the Debtor's investment banker under the terms set forth herein.

Respectfully submitted,

**Orange Peel Enterprises, Inc.**

Jude A. Deauville, CEO

## ATTORNEY CERTIFICATION

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court

for the Southern District of Florida and I am in compliance with the additional qualifications to

practice in this Court set forth in Local Rule 2090-1(A).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished via Notice of

Electronic Filing by CM/ECF to all parties registered to receive such service in this case on this

the 29th day of August, 2016.

Respectfully Submitted,

**SHRAIBERG, FERRARA, LANDAU & PAGE, P.A.**
Attorneys for Debtor
2385 NW Executive Center Drive, #300
Boca Raton, Florida 33431
Telephone: 561-443-0800
Facsimile: 561-998-0047

By:   _/s/ Bradley S. Shraiberg_
        Bradley S. Shraiberg
        Florida Bar No. 121622
        bshraiberg@sfl-pa.com
        Eric Pendergraft
        Florida Bar No. 91927
        ependergraft@sfl-pa.com

# Exhibit A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

ORANGE PEEL ENTERPRISES, INC.,                    Case No. 16-21023-EPK

Debtor.                                           Chapter 11

_____/

## JAMES F. MARTIN'S AFFIDAVIT IN SUPPORT OF
## APPLICATION TO EMPLOY INVESTMENT BANKER

STATE OF FLORIDA          )

COUNTY OF *Miami-Dade*

James F. Martin, being duly sworn, says:

1.      I am the Managing Partner of ACM Capital Partners, LLC ("ACM"), which is engaged in the business of providing financial and operational advice to businesses, with a specialty in lower middle market companies in transition or distress.

2.      I am familiar with the *Application to Employ James F. Martin and ACM Capital Partners, LLC as Debtor's Investment Banker Nunc Pro Tunc to August 9, 2016* (the "Application") filed by Orange Peel Enterprises, Inc. (the "Debtor"), as well as the business and operations of the Debtor.

3.      On August 17, 2016, the Debtor and I entered into the Engagement Letter attached to the Application setting forth the terms of my proposed employment and compensation as the Debtor's investment banker.

4.      ACM has agreed to accept employment on the terms and conditions set forth in the Engagement Letter.

{2081/000/00344104}

5.    I believe that ACM is experienced and qualified to serve as the Debtor's investment banker pursuant to the terms of the Engagement Letter.

6.    I believe that the compensation to be paid to ACM does not exceed the customary compensation for such services in the South Florida area.

7.    ACM agrees that prior to receiving the payment of any amounts under the Agreement, ACM will file a fee application with the Court seeking approval for the same.

8.    Neither I nor any member of ACM hold or represent any interest adverse to the estate with respect to the matters for which we are to be employed and we are disinterested persons within the meaning of 11 U.S.C. § 101(14), as required by § 327(a).

9.    To the best of my information and belief, neither I nor the other members of ACM have any connection with the Debtor, its creditors, or any other party in interest or their respective attorneys or accountants, the U.S. Trustee, or any person employed in the office of the U.S. Trustee, as required by Rule 2014 of the Federal Rules of Bankruptcy Procedure.

10.    I represent no interest adverse to the Debtor or its estate in the matters upon which I am to be engaged.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

_____

JAMES F. MARTIN

SWORN TO AND SUBSCRIBED before me this 29th day of August 2016 by James F. Martin, who is known to me, or who produced _____ as identification.

_____
NOTARY PUBLIC
STATE OF FLORIDA

Print Name: _Tiffany Augusta_
Commission No. _____

TIFFANY ANN AUGUSTA
MY COMMISSION # EE 863958
EXPIRES: January 10, 2017
Bonded Thru Budget Notary Services

{2081/000/00344104}                2

My Commission Expires: _1/10/17_____

# Exhibit B



August 17, 2016


Orange Peel Enterprises, Inc.
d/b/a Greens+
Attn: Jude A. Deauville
1109 19th Street
Vero Beach, FL 32960

Dear Mr. Deauville:

Please allow this engagement letter ("Engagement Letter") and the Standard Terms and Conditions attached hereto (collectively, the "Agreement") to confirm the understanding and agreement between ACM Capital Partners, LLC (referred to herein as "we," or "ACM") and Orange Peel Enterprises, Inc. d/b/a Greens + (referred to herein as "you", the "Company" or the "Client") as to the terms of our engagement, including our mutual understanding and agreement regarding the services to be provided and the manner in which we bill and are paid for these services.

Scope of Services

We will perform the following consulting and advisory services at the direction of the Client:

      a.  Assistance with establishing a value for the Company;
      b.  Review existing financial information and previous valuations on the Company;
      c.  Assistance with the analysis, tracking and reporting regarding cash collateral and any debtor-in-possession financing arrangements and budgets;
      d.  Assistance with identifying and securing a stalking horse for purposes of effecting a sale of the net assets of the Company;
      e.  Assistance with marketing and the sale of the net assets of the Company utilizing an auction process.

Fee and Billing Arrangements

1.  The Client shall pay ACM a $10,000.00 retainer.  The retainer is deemed to be earned upon its receipt. This retainer shall be used for staffing and other out-of-pocket costs normal and customary in this type of engagement.

2.  In addition to the earned retainer noted above, the Company agrees to pay a success fee of 6% on the gross proceeds received from the sale of the net assets subject to a floor of $50,000 (the "Success Fee").

2601 South Bayshore Drive Suite 725
Miami, FL 33133
(305) 960-8851



3. The Client agrees to reimburse ACM for any actual out-of-pocket expenses incurred in the provision of services hereunder, including without limitation, travel, delivery services, postage, data room charges, vendor charges, and other related out-of-pocket expenses. To the extent commercially reasonable, we will endeavor to mitigate these out-of-pocket expenses. Such costs shall only be billed and due should the costs exceed the retainer of $10,000.

4. Except as otherwise expressly set forth in this Engagement Letter, our fees are not contingent upon the financial position and results of operations of the Client or any other Client initiatives, goals or projections or results of this engagement. We cannot guarantee results or final developments in this matter.

5. Either party may terminate this engagement upon written notice of at least ten (10) business days (the "Termination Date"), provided that the Client has paid all fees for services performed and costs incurred through the Termination Date. In addition, in the event that Company terminates this Agreement, Client shall be responsible for payment of the Success Fee in the event that it executes a contract, that ultimately closes, with a buyer procured by ACM within one hundred and eighty (180) days of the Termination Date.

6. ACM will present invoices to the Client on a bi-weekly basis and such invoices are due upon presentation. In the event that the Client disagrees with or questions any amount due under an invoice, the Client agrees that it shall communicate such disagreement to ACM in writing within thirty (30) days of the applicable invoice date. The writing shall set forth the specific basis for the dispute and the amount or portion of the invoice being disputed. Any disputes not raised within such thirty (30) day period shall be deemed waived by Client. All fees incurred must be paid in full prior to ACM's issuance of any reports or rendering of any deposition or trial testimony.

7. The Client acknowledges and agrees that it will not, directly or indirectly, solicit, engage, permit to be engaged or hire any ACM professional to provide services for the Client independently, as an employee of the Client or as an employee of a service provider other than ACM for a period of two (2) years from the execution date of this Engagement Letter without the written consent of ACM. If, prior to written consent by ACM, any ACM professional is hired or utilized by the Client, the Client shall pay ACM the greater of $75,000 or 50% of such professional's annual salary.

Once again, thank you for allowing ACM to assist you in this matter. ACM prides itself on working side by side with its clients in helping them achieve their objectives. If this Agreement conforms to your understanding of our agreement, please sign it and return it electronically. Your signature below will confirm that you have reviewed and agree to the terms. If you have any questions please call me at 305.978.0720.

2601 South Bayshore Drive Suite 725
Miami, FL 33133
(305) 960-8851



[THE REMAINDER OF THE PAGE IS LEFT INTENTIONALLY BLANK]

Very truly yours,

James F. Martin
Managing Partner
ACM Capital Partners, LLC


**Agreed to and Accepted:**

Orange Peel Enterprises, Inc., d/b/a Greens+

By: _____

Title: _____C.E.O._____

Date: _____8/17/16_____



**ACM Capital Partners, LLC**
**Standard Terms and Conditions for Advisory Services**

1. **Services -** It is understood and agreed that ACM's services may include advice and recommendations, but all decisions in connection with the use of such advice and recommendations shall be the responsibility of, and made by, the Client. References herein to Client shall refer collectively to the addressee(s) of the engagement letter or other agreement to which these Standard Terms and Conditions are attached (the engagement letter or any such other agreement is hereinafter referred to as the "Engagement Letter"). The Engagement Letter, any Exhibits or Schedules thereof, and these Standard Terms and Conditions shall be collectively referred to as the "Agreement."

2. **Payment of Invoices -** Client agrees to pay ACM's invoices upon bankruptcy court approval or such other due date as may be agreed upon by the parties. ACM shall have the right to halt or terminate entirely its services under the Engagement Letter until payment is received. All fees, charges and other amounts payable to ACM under the Agreement do not include any sales, use, excise, value added or other applicable taxes, tariffs or duties, payment of which shall be Client's sole responsibility, excluding any applicable taxes based on ACM's net income or taxes arising from the employment or independent contractor relationship between ACM and its personnel.

3. **Term –** ACM's engagement shall terminate on the completion of ACM's services as specified in the Engagement Letter.

4. **Ownership –**

   **(a)** ACM Property – ACM has created, acquired, owns or otherwise has rights in, and may, in connection with the performance of services under the Agreement, employ, provide, modify, create, acquire or otherwise obtain rights in, various concepts, ideas, methods, methodologies, procedures, processes, know-how, and techniques, models, templates; software, user interfaces and screen designs; general purpose consulting and software tools, utilities and routines; and logic, coherence and methods or operation of systems (collectively "ACM Property"). ACM retains all ownership rights in the ACM Property. Client shall acquire no right or interest in such services of any kind to any other party as ACM deems appropriate, and may use the ACM Property to do so. ACM acknowledges that ACM Property shall not include any of Client's confidential information or tangible or intangible property, and ACM shall have no ownership rights in such property.

   **(b)** Ownership of Work Product – All documents, material or information of any kind created by ACM in connection with this engagement, including, without limitation, any written reports, memoranda, work papers or status summaries, are work product (collectively, "Work Product"). All Work Product shall be owned and maintained by ACM. It is agreed that all Work Product and all other working papers and other documents prepared by ACM pursuant to this engagement will be maintained as confidential materials and will not be disclosed to third parties without the Client's consent, except as may be required by law, regulation, or judicial or administrative processes. ACM agrees to notify the Client promptly of any of the following events: (i) a request by anyone to examine, inspect, or copy any Work Product or other working papers, documents or records relating to this engagement; or (ii) any attempt to

   2601 South Bayshore Drive Suite 725
   Miami, FL 33133
   (305) 960-8851



serve, or the actual service of, any court order, subpoena, or summons upon ACM that requires the production of such documents or records.

5.  **Limitation on Warranties – THIS IS A SERVICES ENGAGEMENT. ACM WARRANTS THAT IT WILL PERFORM SERVICES UNDER THE AGREEMENT IN GOOD FAITH, WITH QUALIFIED PERSONNEL, AND IN A COMPETENT AND WORKMANLIKE MANNER. ACM DISCLAIMS ALL OTHER WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.**

6.  **Limitation on Damages** – ACM shall not be liable to the Client for any actions, damages, claims, liabilities, costs, expenses or losses in any way arising out of or relating to the services performed under the Agreement for an aggregate amount in excess of the fees paid to ACM for services rendered by ACM under the Agreement.  In no event shall ACM be liable for consequential, special, indirect, incidental, punitive or exemplary damages, costs, expenses, or losses (including, without limitation, lost profits and opportunity costs).  The provisions of this Paragraph shall apply regardless of the form of action, damage, claim, liability, cost, expense, or loss whether in contract, statue, tort or otherwise.

7.  **Indemnification** –

    **(a)** Client will indemnify, defend and hold harmless ACM, its shareholders, affiliates, principals, members, managers, officers, directors, employees, subcontractors, attorneys, professionals, representatives and agents (collectively, the "<u>Indemnified Parties</u>" or individually, the "<u>Indemnified Party</u>") against any and all losses, claims, damages, liabilities, penalties, obligations and expenses, including, without limitation, the costs and expenses for counsel or others (including employees of ACM, based on their then current hourly billing rates) in investigating, preparing or defending any action or claim, whether or not in connection with litigation in which any Indemnified Party is a party, as and when incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the Agreement, including, without limitation, ACM's costs and expenses to collect or recover from the Client any fees due hereunder; provided, however, that such indemnity shall not apply to any such loss, claim, damage, liability or expense to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from such Indemnified Party's gross negligence or willful misconduct.  The Client and ACM acknowledge and agree that all Indemnified Parties shall be intended third-party beneficiaries of this Paragraph 7 and all other provisions of this Agreement necessary to enforce the terms of this Paragraph.

    **(b)** Client acknowledges and agrees that any advice, recommendations, information or Work Product provided to Client by ACM   in connection with this engagement is for the confidential use of Client and, except as otherwise required by law or permitted by the Agreement, Client will not disclose or permit access to such advice, recommendations, information or Work Product to any third party or summarize or refer to such advice, recommendations, information or Work Product or to ACM's engagement without, in each case, ACM's prior written consent.  Client is responsible for all information it provides to third parties directly, or indirectly through ACM, and it agrees to clearly so state in writing to

2601 South Bayshore Drive Suite 725
Miami, FL 33133
(305) 960-8851



all such third parties. In furtherance of the foregoing, Client will indemnify, defend and hold harmless the Indemnified Parties from and against any and all liabilities suffered by or asserted against the Indemnified Parties in connection with a third party claim to the extent resulting from such party's use or possession of or reliance upon ACM's advice, recommendations, information or Work Product.

**(c)** The Indemnified Parties shall promptly notify Client of any claim for which they seek indemnification provided that any failure to notify Client or timely notify the Client shall not impact, in any way, the applicability of the indemnification provisions contained herein. The Client shall have the right to conduct the defense or settlement of any such claim at its sole expense, and the Indemnified Parties shall cooperate. The Indemnified Parties shall nonetheless have the right to participate in such defense at Client's cost. The Indemnified Parties shall have the right to approve the settlement of any claim that imposes any liability or obligation other than the payment of money damages.

8.    **Cooperation; Use of Information –**

**(a)** Client agrees to cooperate with ACM in the performance of the services under the Agreement and shall provide ACM with timely access to and use of Client's personnel, facilities, equipment, data and information to the extent necessary for ACM to perform the services under the Agreement. The Engagement Letter may set forth additional obligations of Client in connection with the engagement. As requested by ACM, Client acknowledges that Client's failure to assign Client personnel having skills commensurate with their role with respect to this engagement could adversely affect ACM's ability to provide the services under the Agreement.

**(b)** Client acknowledges and agrees that ACM may, in performing its obligations pursuant to this Agreement, use data, material and other information furnished by Client without any independent investigation or verification and that ACM shall be entitled to rely upon the accuracy and completeness of such information in performing the services under the Agreement.

9.    **Force Majeure –** Neither Client nor ACM shall be liable for any delays resulting from circumstances or caused beyond its reasonable control, including, without limitation, fire or other casualty, acts of God, strike or labor dispute, war or other violence, or any law, order or requirement of any governmental agency or authority.

10.   **Limitation on Actions –** No action, regardless of form, arising out of or relating to this Agreement, may be brought by Client more than one year after the cause of action has accrued.

11.   **Independent Contractor –** It is understood and agreed that each of the parties hereto is an independent contractor and that neither party is or shall be considered an agent, distributor, fiduciary or representative of the other. Neither party shall act or represent itself, directly or by implication, as an agent of the other or in any manner assume or create any obligation on behalf of or in the name of, the other.

12.   **Confidentiality-**

2601 South Bayshore Drive Suite 725
Miami, FL 33133
(305) 960-8851



(a) "Confidential Information" means all documents, software, reports, data, records, forms and other materials (including without limitation Work Product) obtained by one party (the "Receiving Party") from the other party (the "Disclosing Party") in the course of performing the services under the Agreement:  (i) that have been marked as confidential; (ii) whose confidential nature has been made known by the Disclosing Party to the Receiving Party; or (iii) that due to their character and nature, a reasonable person under like circumstances would treat as confidential.   Notwithstanding the foregoing, Confidential Information does not include information which: (1) is already known to the Receiving Party at the time of disclosure by the Disclosing Party; (2) is or becomes publicly known through no wrongful act of the Receiving Party; (3) is independently developed by the Receiving Party without benefit of the Disclosing Party's Confidential Information; or (4) is received by the Receiving Party from a third party without restriction and without breach of an obligation of confidentiality.

(b) The Receiving Party will deliver to the Disclosing Party all Confidential Information of the Disclosing Party and all copies thereof when the Disclosing Party requests the same, except for one copy thereof that the Receiving Party may retain for its records.  The Receiving Party shall not use or disclose to any person, firm or entity an Confidential Information of the Disclosing Party without the Disclosing Party's express, prior written permission; provided, however, that notwithstanding the foregoing, the Receiving Party may disclose Confidential Information to the extent that it is required to be disclosed pursuant to a statutory or regulatory provision or court order or to fulfill professional obligations and standards.

(c) Each party shall be deemed to have met its nondisclosure obligations under this Paragraph 12 as long as it exercises the same level of care to protect the other's information as it exercises to protect its own Confidential Information but in no event less than reasonable care, except to the extent that applicable law or professional standards impose a higher requirement.

(d) If the Receiving Party receives a subpoena or other validly issued administrative or judicial demand requiring it to disclose the Disclosing Party's Confidential Information, the Receiving Party shall provide prompt written notice to the Disclosing Party of such demand in order to permit it to seek a protective order.  So long as the Receiving Party gives notice as provided herein, the Receiving Party shall be entitled to comply with such demand to the extent permitted by law, subject to any protective order or the like that may have been entered in the matter.

(e) Notwithstanding anything to the contrary set forth herein, no provision in the Engagement Letter or these Terms and Conditions is or is intended to be construed as a condition of confidentiality within the meaning of Internal Revenue Code sections 6011, 6111, 6112 or the regulations thereunder.  Client (and each employee, representative, or other agent of Client) may disclose to any and all persons, without limit of any kind, the tax treatment and tax structure of any transaction within the scope of this engagement that reduces or defers Federal tax and all materials of any kind (including opinions or other tax analyses) that are provided to Client relating to such tax treatment and tax structure.

13. **Survival** - The provisions of Paragraphs 1, 2, and 4 through 22 hereof shall survive the expiration or termination of this engagement.

2601 South Bayshore Drive Suite 725
Miami, FL 33133
(305) 960-8851



14. **Assignment -** Neither party may assign, transfer or delegate any of its rights or obligations without the prior written consent of the other party, such consent not to be unreasonably withheld; provided, however, that ACM may (i) assign its rights and obligations under the Agreement to any Affiliate or any successor to ACM's business, and (ii) use subcontractors to provide services under the Agreement without having to obtain the consent of the Client.

15. **Severability -** In the event that any term or provision of this Agreement shall be held to be invalid, void or unenforceable, then the remainder of this Agreement shall not be affected, and each such term and provision of the Agreement shall be valid and enforceable to the fullest extent permitted by law.

16. **Governing Law –** This Agreement, including the interpretation and enforcement thereof, shall be governed by and construed in accordance with the laws of the State of Florida, without regard to the conflict of laws provisions thereof.

17. **Jurisdiction and Venue –** Each of the parties to this Agreement expressly submit themselves to and agree that all actions arising out of this Agreement shall occur solely in the United States District Court for the Southern District of Florida, provided that the requisite elements for such federal court jurisdiction are met, including but not limited to, complete diversity jurisdiction between the parties and the amount in controversy. In the event that the requisite elements for federal court jurisdiction cannot be met, then the parties to this Agreement expressly submit themselves to and agree that venue and jurisdiction for all actions arising out of this Agreement shall be either in the circuit court in and for Palm Beach County, Florida or the Bankruptcy Court for the Southern District of Florida.

18. **Miscellaneous -**

    **(a)** In accepting this engagement, Client acknowledges the completion of this engagement will not constitute a basis for Client's assessment or evaluation of internal controls over financial reporting and disclosure controls and procedures, or its compliance with principal officer certification requirements under Section 302 of the Sarbanes-Oxley Act of 2002 (the "Act"). This engagement shall not be construed to support Client's responsibilities under Section 404 of the Act requiring each annual report filed under Section 13(a) or 15(d) of the Securities Exchange Act of 1934 to contain an internal control report from management.

    **(b)** ACM may communicate with Client by electronic mail or otherwise transmit documents in electronic form during the course of this engagement. Client accepts the inherent risks of these forms of communication (including the security risks of interception of or unauthorized access to such communications, the risks of corruption of such communications, the risks of viruses or other harmful devices) and agrees that it may rely only upon a final hardcopy version of a document or other communication that ACM transmits to Client.

    **(c)** Neither party shall use the other party's name, trademarks, service marks, logos, trade names and/or branding without such party's prior written consent. Notwithstanding anything herein to the contrary, ACM may reference or list Client's name and/or general description of the engagement. Client also agrees that upon reasonable prior notice from ACM, Client will be willing to provide a reference for ACM (e.g. in the form of analyst telephone calls, client telephone calls, presentations and the like).

2601 South Bayshore Drive Suite 725
Miami, FL 33133
(305) 960-8851



**(d)** Any notices given pursuant to this Agreement shall be in writing, delivered to the address (es) set forth in the Engagement Letter, and shall be considered given when received.

**(e)** In case any provision of this Agreement shall be held by a court with jurisdiction over the parties to this Agreement to be invalid, illegal or otherwise unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

19. **Entire Agreement -** This Agreement, including the Engagement Letter, the Standard Terms and Conditions and any Exhibits or Schedules, constitute the entire agreement between ACM and Client with respect to this engagement and supersede all other oral and written representation, understandings or agreements relating to this engagement. It is expressly understood by all parties hereto that there have been no representations, express or implied, other than as set forth in this Agreement, and that no party hereto has been induced to enter into this Agreement by any such representation.

20. **Modification** – This Agreement may not be modified, amended, changed, discharged or terminated orally, but only in writing and signed by both ACM and Client.

21. **Representation by Counsel** – Each of the parties to this Agreement asserts that they have been represented by counsel in connection with this Agreement and that the terms and conditions of this Agreement are understood fully and agreed to and accepted voluntarily. Further, each of the parties to this Agreement declare that their counsel participated in the drafting of this Agreement and that, accordingly, this Agreement shall not be construed more strongly against any party hereto because it drafted this Agreement.

22. **Attorneys' Fees** – In the event of any litigation arising out of this Agreement, the prevailing party in any action or proceeding shall be entitled to recover its fees, costs and expenses (including, without limitation, reasonable attorneys' fees, arbitration fees, and court costs).

23. **No Recourse Against Nonparty Affiliates** – All claims, obligations, liabilities or causes of action that may be based upon, arise under or in any way relate to this Agreement may be made only against the parties to this Agreement.  Any person or entity not a party to this Agreement, including but not limited to, any director, officer, employee, member, partner, manager, stockholder, affiliate, agent, or attorney, shall have no liability for any claims, causes of action, obligations, or liabilities arising under or in any way related to this Agreement.

2601 South Bayshore Drive Suite 725
Miami, FL 33133
(305) 960-8851