UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

ORANGE PEEL ENTERPRISES, INC.,   Case No. 16-21023-EPK

Debtor.   Chapter 11

_____/

### APPLICATION TO EMPLOY JASON BURATTI, ESQ. AND BURATTI P.A. AS DEBTOR'S SPECIAL COUNSEL *NUNC PRO TUNC* TO AUGUST 9, 2016

Debtor Orange Peel Enterprises, Inc. (the "Debtor"), pursuant to 11 U.S.C. § 327(e), hereby requests approval to employ Jason Buratti, Esq. and Buratti, P.A. as the Debtor's special counsel for corporate matters *nunc pro tunc* to August 9, 2016. In support of this Application, the Debtor attaches the affidavit of Jason Buratti (the "Affidavit") as Exhibit A and states as follows:

### BACKGROUND

1. The Debtor is in the business of formulation, manufacture, and wholesale distribution of health food products and supplements under the Greens+® brand and brand extensions.

2. On August 9, 2016, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Petition Date"). Pursuant to Bankruptcy Code §§ 1107(a) and 1108, the Debtor is operating its business and managing its affairs as a debtor in possession. As of the date hereof, no trustee, examiner, or statutory committee has been appointed in this Chapter 11 case.

3. By the Debtor's estimate, the Debtor owns assets totaling $5,639,131.95, ECF No. 22, p.2, and generated gross revenue of $6,045,626.41 in the twelve months ending on June

30, 2016. However, the Debtor was unfortunately forced to seek bankruptcy protection after it suffered a dramatic reduction in income due to the actions of prior management and was also served with two substantial lawsuits. ECF No. 10 and ECF No. 22, pp.17, 18, 24, and 25.

4. While the Debtor is exploring all options, it is considering the sale of its assets through this bankruptcy case.

5. To further this end, the Debtor seeks to employ Jason Buratti, Esq. ("Mr. Buratti") and Buratti, P.A. ("PA", and with Mr. Buratti, the "Firm") as the Debtor's special counsel for corporate matters pursuant to the terms of the engagement letter (the "Engagement Letter") attached hereto as Exhibit B. Mr. Buratti previously represented the Debtor in private practice and has a long history with the company and the company's products and intellectual property.

6. As set forth in the Engagement Letter, the Firm's duties would include business and corporate legal services which would specifically include transactional services relating to the Debtor's sale of its assets and/or reorganization.

7. Prepetition, the Firm was engaged by the Debtor to perform business and corporate legal services. However, the Firm does not hold any prepetition claims against the Debtor.

8. The Debtor believes that the Firm has significant prior experience as to the aforementioned duties with extensive work in the field of health food products and supplements. Additionally, the Firm is familiar with the Debtor's business and operations.

## PROFESSIONAL COMPENSATION

9. The Firm's proposed compensation arrangement is set forth in the Engagement Letter as the greater of: (a) a reduced hourly rate of $325; or (b) a contingency fee consisting of 4% of the gross sale proceeds of the Debtor's assets. Moreover, the Debtor has agreed to

reimburse the Firm's reasonable costs and expenses according to the Firm's customary reimbursement policies.

10. Prepetition, the Debtor paid the firm a retainer of $9,000 for such employment, which the Firm is holding in trust.

11. The Firm agrees that prior to receiving the payment of any amounts under the Agreement, the Firm will file a fee application with the Court seeking approval for the same.

12. The Debtor believes that the fee arrangement set forth above and in the Agreement is reasonable and necessary and, therefore, respectfully requests it be approved by the Court.

## NO ADVERSE INTEREST

13. Based on the Affidavit, the Debtor believes that the Firm does not hold or represent any interest adverse to the estate or the Debtor with respect to the matters for which it is to be employed as required by 11 U.S.C. § 327(e).

**WHEREFORE**, based on the foregoing, the Debtor respectfully requests that the Court approve the Debtor's employment of the Firm as the Debtor's special counsel for corporate matters under the terms set forth herein.

Respectfully submitted,

Orange Peel Enterprises, Inc.

_(signed)_ CEO
Jude A. Deauville, CEO

## ATTORNEY CERTIFICATION

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished via Notice of Electronic Filing by CM/ECF to all parties registered to receive such service in this case on this the 30th day of August, 2016.

Respectfully Submitted,

**SHRAIBERG, FERRARA, LANDAU & PAGE, P.A.**
Attorneys for Debtor
2385 NW Executive Center Drive, #300
Boca Raton, Florida 33431
Telephone: 561-443-0800
Facsimile: 561-998-0047

By: _/s/ Bradley S. Shraiberg_
    Bradley S. Shraiberg
    Florida Bar No. 121622
    bshraiberg@sfl-pa.com
    Eric Pendergraft
    Florida Bar No. 91927
    ependergraft@sfl-pa.com

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

ORANGE PEEL ENTERPRISES, INC.,     Case No. 16-21023-EPK

    Debtor.     Chapter 11
_____/

**JASON BURATTI'S AFFIDAVIT IN SUPPORT OF**
**APPLICATION TO EMPLOY SPECIAL COUNSEL**

STATE OF FLORIDA    )

COUNTY OF BROWARD  )

Jason Buratti, being duly sworn, says:

1. I am a licensed Florida attorney and the President of the law firm of Buratti, P.A. ("PA").

2. I am familiar with the *Application to Employ Jason Buratti, Esq. and Buratti P.A. as Debtor's Special Counsel Nunc Pro Tunc to August 9, 2016* (the "Application") filed by Orange Peel Enterprises, Inc. (the "Debtor").

3. On August 23, 2016, the Debtor and my firm entered into the Engagement Letter attached to the Application setting forth the terms of my proposed employment and compensation as the Debtor's special counsel for corporate matters.

4. PA and I have extensive experience providing business and corporate transactional legal services, including such services for the Debtor, and further including in the fields of fitness and health, further including in the field of health products and supplements. Having represented the Debtor previously many years ago and during its prepetition efforts, I have a high degree of familiarity with the Debtor's business, operations, and management team. Finally, PA and I have

taken an ongoing role in the logistics of the Debtor's ongoing business operations and I will be directly assisting in the translation of that business into the bankruptcy forum.

5. PA has agreed to accept employment on the terms and conditions set forth in the Engagement Letter.

6. Prior to the Debtor's bankruptcy petition date, PA received a $9,000 retainer from the Debtor for such services, which PA is holding in trust.

7. Neither I nor PA hold any prepetition claims against the Debtor.

8. Neither I nor PA represent or hold any interest adverse to the Debtor or to the Debtor's estate with respect to the matters on which PA is to be employed.

9. To the best of my knowledge, no director, officer, or employee of PA is related to any United States District Court Judge or United States Bankruptcy Court Judge in this District or to the United States Trustee for such District or any employee of the office thereof.

10. I believe that the compensation to be paid to PA as set forth in the Engagement Letter does not exceed the customary compensation for such services in the South Florida area.

11. The hourly rate referenced in the Engagement Letter, $325, is less than my customary hourly rate of $425.

12. PA agrees that prior to receiving the payment of any amounts under the Agreement, PA will file a fee application with the Court seeking approval for the same.

13. Other than as set forth above, no arrangement has been entered into between the Debtor, any creditors or other party-in-interest, and PA with respect to its compensation for post-petition representation of the Debtor.

[Continued on following page]

2

14. Except for arrangements among the members of PA, PA has no agreement with any other entity to share any compensation received, nor will any sharing be made, except as permitted under section 504(b)(1) of the Bankruptcy Code.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

_____
JASON BURATTI

SWORN TO AND SUBSCRIBED before me this 30th day of August 2016 by Jason R. Buratti, who is known to me, or who produced ___Fl Licence___ as identification.

_____
NOTARY PUBLIC
STATE OF FLORIDA

Print Name: Helena B Medina
Commission No. _____
My Commission Expires: _____

[Notary seal: HELENA BEATRIZ MEDINA, Notary Public - State of Florida, My Comm. Expires Feb 19, 2017, Commission # EE 876521, Bonded Through National Notary Assn.]

3

# EXHIBIT B



August 23, 2016

**CONFIDENTIAL ENGAGEMENT & COSTS AGREEMENT**

Mr. Jude Deauville
Client(s):   Orange Peel Enterprises, Inc.
1109 19th Street
Vero Beach, Florida 32960

Dear Mr. Deauville:

Thank you for retaining Buratti P.A. to represent you as special bankruptcy counsel (corporate).  Subject to approval by the Bankruptcy Court, this engagement is effective on August 9, 2016.  In this role, I will support Mr. Bradley Shraiberg's work as bankruptcy counsel, provide related business legal services, and provide continued corporate legal services, specifically including the negotiation and editing of business agreements related to the sale of the company's assets and/or reorganization. Anything outside the scope of this engagement may, if authorized and accepted, be added to the scope of work in an email that is confirmed by me and, if required, approved by the Bankruptcy Court.  Attached to this letter is my firm's standard terms for limited engagements, to which you are subscribing by signing below.  It is not within the scope of this work for me to provide tax, regulatory or securities advice, in which case specialists may be needed.

The fee structure we have agreed to is the greater of (1) a reduced hourly rate or (2) a four percent (4%) contingency fee based on the gross proceeds from the sale of your assets.  I acknowledge your payment of an initial deposit of $9,000.00 which is in trust.  Your reduced hourly rate is $325.00/hour.  (My customary rates are $425.00/hour generally and $625.00 per hour for litigation.)  In the event that I am terminated without cause, you agree to pay my customary hourly rate applied to all of my time on the matter.

If the terms described above and in the attached terms of engagement are satisfactory, please so indicate by signing and returning the enclosed copy of this letter.  This agreement supersedes our previous engagement agreement.  By signing, you agree that an electronic copy shall be treated as an original.  By signing this letter, you also acknowledge that you have read and understood the Statement of Client's Rights that are attached.



Page 2 of 7

This engagement is contingent upon approval from the Bankruptcy Court. Upon that approval, this Agreement will supersede all prior agreements between us.

I look forward to working with you to bring these matters to a successful conclusion.

Sincerely,

BURATTI P.A.

By :
Jason R. Buratti
For the Firm

Attachment

By signing below you agree to the above and corresponding enclosure and confirm that you have read and understood the STATEMENT OF CLIENT'S RIGHTS, below:

Approved and signed on August 23, 2016.

By:
Name: Jude Deauville, for Orange Peel Enterprises, Inc.
Title: Chief Executive Officer & President

Notice: This agreement contains provisions requiring arbitration of fee disputes as well as any controversy, dispute, or claim between us, whether based on this agreement, on a claim of inadequate representation or breach of fiduciary duty, or on any other grounds. Before you sign this agreement you should consider consulting with another lawyer about the advisability of making an agreement with mandatory arbitration requirements.


**TERMS OF LIMITED/QUALIFIED ENGAGEMENT**

We appreciate your decision to retain Buratti P.A. as your counsel for this specific, limited and/or qualified engagement. This document explains how we work in limited and/or qualified engagements, our obligations to you, your obligations to us, what we will do on your behalf, and how our charges will be determined and billed. Experience has shown that an understanding of these matters will contribute to a better relationship between us and that in turn makes our efforts more productive.

Our engagement and the services that we will provide to you are limited to the matter identified in the accompanying letter. Any changes in the scope of our representation as described in the letter must be approved in writing by Buratti P.A. We will provide services of a strictly legal nature related to the matters described in that letter, subject to any qualifications or limitations in the letter or other communications. You will provide us with the factual information and materials we require to perform the services identified in the letter, and you will make such business or technical decisions and determinations as are appropriate. You will not rely on us for business, investment, tax, immigration, securities, or accounting advice or decisions, or expect us to investigate the character or credit of persons or entities with whom you may be dealing.

As has been explained to you, the hiring of an attorney does not guarantee an outcome. All aspects of this matter have been explained to you, and you understand both the positive and negative aspects of the matter.

<u>Confidentiality and Related Matters</u>

Regarding the ethics of our profession that will govern our representation, several points deserve emphasis. As a matter of professional responsibility, we are required to preserve the confidences and secrets of our clients. This professional obligation and the legal privilege for attorney-client communications exist to encourage candid and complete communication between a client and his lawyer. Additionally, you should be aware that, in instances where we represent a corporation or other entity, our client relationship is with the entity and not with its individual executives, shareholders, directors, partners, or persons in similar positions, or with its parent, subsidiaries, or other affiliates. In those cases, our professional responsibilities are owed only to that entity, alone, and no conflict of interest will be asserted by you because we represent persons with respect to interests that are adverse to individual persons or business organizations who have a relationship with you. Of course, we can also represent individual executives, shareholders, partners, and other persons related to the entity in matters that do not conflict with the interests of the entity, but any such representation will be the subject of a separate engagement agreement. Similarly, when we represent a party on an insured claim, we represent the insured, not the insurer, even though we may be approved, selected, or paid by the insurer.

<u>Fees and Billing</u>

When establishing fees for services that we render, we are guided primarily by the time and labor required, although we also consider other appropriate factors, such as the novelty and difficulty of the legal issues involved; the legal skill required to perform the particular assignment; time-saving use of resources (including research, analysis, data and documentation) that we have previously developed and stored electronically or otherwise in quickly retrievable form; the fee customarily charged by comparable firms for similar legal services; the amount of money involved or at risk and the results obtained; and the time constraints imposed by either the client or the circumstances. The firm generally requires a retainer in an amount that is appropriate with respect to the proposed representation.

We use daily rates (with a Day being eight total hours: four hours in a single calendar day and four hours over additional days; all eight hours must be used during a one-month period. We also may use fixed fees that are established based on a survey of a given scope of work. Often, work may exceed a Day or a Fixed Fee project may involve unexpected or unusual and/or changed circumstances; in these cases, overages occur and your are charged

hourly.  Such overages often result from ancillary issues you may seek advice about, unexpected deviations from scope of work, changes in underlying information, new information, and the like.  Our standard rates are $3,300.00 per day and $440 per hour.  Of course, our rates change periodically to account for increases (or decreases) in our cost of delivering legal service, other economic factors, and the augmentation of a particular lawyer's ability, experience, and reputation.  Any such changes in rates are applied prospectively.  Daily and fixed rates do not include billing records to achieve economy for your benefit.  Hourly time is charged at one-quarter hour increments.

If you and we have agreed on a Fixed Fee arrangement, you agree that our fees will not be limited to the fixed amount if you fail to make a complete and accurate disclosure of information that we have requested, if you change the scope of the project or seek advice that is tangential to it, if facts or circumstances change (whether from past or future facts or law), or if you materially change the terms, conditions, scope, or nature of the work, as described by you when we determined the Fixed Fee.  If any of these events occurs, you agree that our fees will be based upon the other factors described above or hourly, in my discretion, unless you and I agree on a revised fixed fee.

To protect all attorney's fees and costs until they are paid, Buratti P.A. is entitled to an attorney's charging and/or retaining lien on all real and personal property, monies, assets (of any kind, nature or description), or other things of value which Buratti P.A. recovers, retains, preserves or protects for you by virtue of any legal services provided by us, so that any legal fees and costs that you are required to pay us shall be paid first out of any recovery or the assets preserved and protected for you.   In the event this law firm is discharged or withdraws as client's attorneys before completion of any lawsuit that is filed, all accrued fees become immediately due and payable, and you agree that the law firm shall be entitled to file a lis pendens, charging lien and/or retaining lien and obtain a court order protecting its right to a charging lien and/or retaining lien and to have the amount of their legal fee determined in the same action or the law firm may file an independent action as well as proceed in the same action to enforce its charging lien.

Should you receive any cash property settlements as part of your matter, you agree to have this money deposited into our Trust Account and you hereby give us the authority to pay any balance due us out of this money before transferring the balance to you, unless otherwise agreed in writing prior to our receipt of the funds.

The provisions of this Agreement, in our discretion, may be disclosed to the Court in connection with any application by us for fees for services that may be rendered or costs advanced on your behalf, and we have the right to advise the court of any amounts of fees and costs that we have received.

Out-of-Pocket Expenses

We typically include general office costs in our fee structure so that you do not see cost line items.  Costs that are not handled this way are billed at cost for out-of-pocket expenses that we have advanced for certain support activities or legal research, travel, postage, shipping, couriers, filing, recording, certification, and registration fees charged by governmental bodies, complex document production, and charges for substantial photocopying materials sent to the client or third parties or required for our use.  We will request an advance cost deposit (in addition to the advance fee deposit) when we expect that we will be required to incur substantial costs on your behalf.  International calls are usually the only internal office expenses that may be charged, but usually are not.

During the course of our representation, it may be appropriate to hire third parties to provide services on your behalf.  These services may include such things as consulting or testifying experts, investigators, providers of computerized litigation support, and court reporters.  Because of the legal "work product" protection afforded to services that an attorney requests from third parties, in certain situations our firm may assume responsibility for retaining the appropriate service providers.  Even if we do so, however, you will be responsible for paying all fees and expenses directly to the service providers or reimbursing us for these expenses.



Billing

In instances in which we represent more than one person with respect to a matter, each person that we represent is jointly and severally liable for our fees and expenses with respect to the representation.  Our statements contain a concise summary of each matter for which legal services are rendered and a fee is charged.  If our statements are not paid in a timely manner, we reserve the right to discontinue services.  Additionally, if our statement has not been paid within 30 days from the date of the statement, we may impose an interest charge of 1.5% per month (a 18% percentage rate) from the 30th day after the date of the statement until it is paid in full.  Any payments made on past due statements are applied first to the oldest outstanding statement.  If you have a billing dispute, we strongly recommend you engage us in a good faith discussion to resolve it.  If you fail to timely pay an invoice, you agree that we may immediately stop work and you agree to assume any risk to your interests associated with the stoppage of work for non-payment by you.  If you dispute a billing amount or anything else for that matter, you agree to first post all fees currently due (whether or not disputed) to my attorney trust account, and you agree to waive any such dispute should you fail to do so.

Termination

Upon completion of the matter to which this representation applies, or upon earlier termination of our relationship, the attorney-client relationship will end unless you and we have expressly agreed to a continuation with respect to other matters.  We hope, of course, that continuation will be the case.  The representation is terminable at will by either of us.  The termination of the representation will not terminate your obligation to pay fees and expenses incurred prior to the termination.

Applicable law/Arbitration/Entire Agreement/Severability/No Representations/Attorneys' fees

This Agreement is governed by the laws of the State of Florida, U.S.A. (including fees and disclosures) without regard to conflicts of laws principles.  You agree that any and all disputes arising under or relating to this letter agreement, or the engagement and legal services to be rendered, including but not limited to fee disputes, legal malpractice claims, and claims of breach of fiduciary duty, breach of contract, or any others, shall be resolved exclusively through binding arbitration before the American Arbitration Association under its expedited rules with a single arbitrator, with the exclusive locale of and venue for the arbitration in Miami-Dade County, Florida.  You understand that by agreeing to arbitration as a mechanism to resolve all potential controversies, disputes, or claims between us, you are waiving certain rights, including the right to bring an action in court, the right to a jury trial, the right to broad discovery, and the right to an appeal. You understand that in the context of arbitration, one arbitrator, not by a judge or a jury, decides a case. You agree that, in the event of a controversy, dispute, or claim between us, the prevailing party will be entitled to recover from the losing party all costs and expenses he, she, or it incurs in bringing and prosecuting, or defending, the arbitration, including reasonable attorneys' fees and costs. You agree that the arbitrator's award shall be effective and enforceable in any jurisdiction in the world in which you or I are present.  You waive all defenses based on personal jurisdiction, venue or that the forum is not convenient.  This document sets out all terms of an engagement and costs agreement (Terms) between you and me.  You acknowledge that you are not relying on any representation by me not specifically set out in this letter.  In the event any provision or part of a provision of these Terms is deemed invalid or unenforceable, the remainder shall be interpreted to sustain the validity and enforceability of the rest.

* * * * *

Your agreement to this engagement constitutes your acceptance of these terms and conditions.  If any of them is unacceptable to you, please advise us now so that we can resolve any differences and proceed with a clear, complete, and consistent understanding of our relationship.



Page 6 of 7

**STATEMENT OF CLIENT'S RIGHTS**

Before you, the prospective client, arrange a contingency fee agreement with a lawyer, you should understand this statement of your rights as a client. This statement is not a part of the actual contract between you and your lawyer, but, as a prospective client, you should be aware of these rights.

1. There is no legal requirement that a lawyer charge a client a set fee or a percentage of money recovered in a case. You, the client, have the right to talk with your lawyer about the proposed fee and to bargain about the rate or percentage as in any other contract. If you do not reach an agreement with one lawyer you may talk with other lawyers.

2. Any contingency fee contract must be in writing and you have three (3) business days to reconsider the contract. You may cancel the contract without any reason if you notify your lawyer in writing within three (3) business days of signing the contract. If you withdraw from the contract within the first three (3) days, you do not owe the lawyer a fee although you may be responsible for the lawyer's actual costs during that time. But if your lawyer begins to represent you, your lawyer may not withdraw from the case without giving you notice, delivering the necessary papers to you, and allowing you time to employ another lawyer. Often, your lawyer must obtain court approval before withdrawing from a case. If you discharge your lawyer without good cause after the 3-day period, you may have to pay a fee for the work the lawyer has done.

3. Before hiring a lawyer, you, the client, have the right to know about the lawyer's education, training and experience. If you ask, the lawyer should tell you specifically about the lawyer=s actual experience dealing with cases similar to yours. If you ask, the lawyer should provide information about specific training or knowledge and give you this information in writing if you request it.

4. Before signing a contingent fee contract with you, a lawyer must advise you whether the lawyer intends to handle your case alone or whether other lawyers will be helping with the case. If your lawyer intends to refer the case to other lawyers, the lawyer should tell you what kind of fee sharing arrangement will be made with the other lawyers. If lawyers from different law firms will represent you, at least one lawyer from each law firm must sign the contingent fee contract.

5. If your lawyer intends to refer your case to another lawyer or counsel with other lawyers, your lawyer should tell you about that at the beginning. If your lawyer takes the case and later decides to refer it to another lawyer or to associate with other lawyers, you should sign a new contract that includes the new lawyers. You, the client, also have the right to consult with each lawyer working on your case and each lawyer is legally responsible to represent your interest and is legally responsible for the acts of other lawyers involved in the case.

6. You, the client, have the right to know in advance how you will need to pay the expenses and the legal fees at the end of the case. If you pay a deposit in advance for costs, you may ask reasonable questions about how the money will be or has been spent and how much of it remains unspent. Your lawyer should give a reasonable estimate about future necessary costs. If your lawyer agrees to lend or advance you money to prepare or research the case, you have the right to know periodically how much money your lawyer has spent on your behalf. You also have the right to decide, after consulting with your lawyer, how much money is to be spent to prepare a case. If you pay the expenses, you have the right to decide how much to spend. Your lawyer should also inform you whether the fee will be based on the gross amount recovered or the amount recovered minus the costs.

7935 East Drive, #804        P 954-683-1072        North Bay Village, FL 33141
BURATTI PA



Page 7 of 7

7. You, the client, have the right to be told by your lawyer about possible adverse consequences if you lose the case. Those adverse consequences might include money which you might have to pay to your lawyer for costs and the liability you might have for attorney's fees to the other side.

8. You, the client, have the right to receive and approve a closing statement at the end of the case before you pay any money. The statement must list all of the financial details of the entire case, including the amount recovered, all expenses, and a precise statement of your lawyer's fee. Until you approve the closing statement, you need not pay any money to anyone, including your lawyer. You also have the right to have every lawyer or law firm working on your case sign this closing statement.

9. You, the client, have the right to ask your lawyer at reasonable intervals how the case is progressing and to have these questions answered to the best of your lawyer's ability.

10. You, the client, have the right to make the final decision regarding settlement of a case. Your lawyer must notify you of all offers of settlement before and after the trial. Offers during the trial must be immediately communicated and you should consult with your lawyer regarding whether to accept a settlement. However, you must make the final decision to accept or reject a settlement.

11. If at any time, you, the client, believe that your lawyer has charged an excessive or illegal fee, you have the right to report the matter to The Florida Bar, the agency that oversees the practice and behavior of all lawyers in Florida. For information on how to reach The Florida Bar, call (800) 342-8060, or contact the local bar association. Any disagreement between you and your lawyer about a fee can be taken to court and you may wish to hire another lawyer to help you resolve this disagreement. Usually fee disputes must be handled in a separate lawsuit, unless your fee contract provides for arbitration. You can request, but may not require, that a provision for arbitration (under Chapter 682, Florida Statutes, or under the fee arbitration rule of the Rules Regulating The Florida Bar) be included in your fee contract.

DATED August 23, 2016

CLIENT SIGNATURE                                   ATTORNEY SIGNATURE

Note: This page does not need to be separately signed, since it is covered in the acknowledgement.

7935 East Drive, #804           P 954-683-1072           North Bay Village, FL 33141
                                BURATTI PA